**UNITED STATES of America, Plaintiff,**

v.

**William Leonard PICKARD and Clyde Apperson, Defendant.**

**No. 00–40104–01/02–RDR.**

United States District Court, D. Kansas.

April 4, 2003.

---

Mark L. Bennett, Jr., Bennett & Hendrix, LLP, Topeka, KS, for Defendant.

Gregory G. Hough, Office of United States Attorney, Topeka, KS, for Plaintiff.

William K. Rork, Rork Law Office, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon defendant Pickard's motion to dismiss based upon outrageous government conduct and prosecutorial misconduct or, in the alternative, for a mistrial.[1] This motion was filed during the trial. Following the end of the trial and just prior to the verdict, the court denied this motion. The purpose of this memorandum and order is to memorialize and elaborate upon the court's ruling.

In his motion, Pickard contends that he has "become aware of alleged actions and events that the government has both engineered and participated in which prejudice" his case. He points to the following

---

1. During oral argument on this motion, defendant Apperson sought to join in the motion. This request shall be allowed.

matters as examples of prosecutorial and governmental misconduct: (1) engaging in improper activities at the missile base prior to the issuance of search warrants; (2) deliberately deceiving the magistrate within the search warrant affidavits; (3) taking action to confuse the issue of his standing to challenge the search warrant; (4) withholding relevant discovery and delaying the production of relevant discovery; (5) failing to disclose the past activities of its key witness, Gordon Todd Skinner, as a confidential informant; and (6) advising Skinner how to testify during his testimony.

As evidentiary support for these positions, the defendant offered the testimony of Skinner in a hearing that followed the conclusion of his testimony as a government witness. Prior to the hearing, the defendant made certain representations concerning the nature of his testimony. The actual testimony he offered did little to support many of these allegations. The defendant also provided the court with additional unsigned affidavits from Skinner on March 31, 2003 in support of this motion. These affidavits cover much of what Skinner has already testified to, but they do include a few new areas of alleged misconduct.[2]

■■■ Prosecutorial misconduct can result in a denial of due process. United States v. Maynard, 236 F.3d 601, 606 (10th Cir.2000). To rise to the level of a due process violation, the prosecutorial misconduct at issue must be of sufficient significance to result in the denial of the defendant's right to a fair trial. Id. A two-step process is employed in reviewing claims of prosecutorial misconduct. United States v. Gordon, 173 F.3d 761, 769 (10th Cir.), cert. denied, 528 U.S. 886, 120 S.Ct. 205, 145 L.Ed.2d 172 (1999). First, the court must determine if the conduct was improper. Id. Second, we must determine if the conduct warrants dismissal or a new trial. Id.

The court would initially note that the defendant's motion is woefully lacking in any details. The defendant has failed to offer any specific facts to support many of the aforementioned allegations. Moreover, the defendant has failed to provide any legal support for many of his positions. Nevertheless, the court shall make every effort to address the defendant's arguments.

The court has already considered the matters related to the searches and search warrants in our order addressing the defendant's renewed motion to suppress based on newly discovered evidence. The court found no misconduct by law enforcement officials or the government in the events leading to the search warrants at the missile base or in the execution of those search warrants.

The defendant has contended throughout that certain evidence has not been provided to him by the government or has not been provided in a timely manner. The court has found no support for this position. It appears to the court that the government has made all the evidence required by Fed.R.Crim.P. 16, Brady and Giglio available to the defendants. The court is unaware of any material that has been intentionally withheld from the defendants.

2. To the extent that these affidavits address new issues of misconduct, the court shall not directly address them. The court does not find the information contained in these affidavits on these issues credible. The court finds the responses contained in the affidavits filed in reply to these affidavits from the government agents and counsel to be credible. Accordingly, the court does not find that any of the new issues noted in the affidavits submitted to the court on March 31, 2003 provide any basis for relief.

The court does want to address several matters that arose during trial. Most of these matters are addressed by the defendant in the instant motion, but at least one arose after the filing of the motion. The court does not believe that any additional briefs are necessary because the parties have had the opportunity to address this matter during oral argument.

### Pickard's Address Book

■ Defendant Pickard testified that a copy of an address book taken from a computer that was seized on November 6, 2000 and introduced by the government into evidence as Government Exhibit 196, was incomplete. He asserted that the address book contained references to individuals who were employed by the DEA and that these items were missing. He testified that an examination of the computer would confirm his testimony. The court undertook an examination of the contents of the computer and learned that the address book did contain the DEA references. As the court was examining the computer, the government quickly learned that the exhibit that it had introduced was incomplete. The government informed the court that the computer had been sent to the DEA for examination and the DEA references had been deleted by computer analysts at the DEA and sent to someone else for further review. The DEA computer analysts then sent a copy of the address book with the DEA references deleted to government counsel. They later sent a complete copy, but government counsel was unaware that there was any difference in the two lists of names and addresses. After learning of these circumstances, the court allowed the defendant to introduce a complete copy of the address book.

This incident is perhaps the most serious example of government misconduct because all of the others noted by the defendant either do not constitute any type of improper conduct or are so trivial as to be of little consequence. The court was concerned by this incident, but ultimately we do not believe that government counsel was involved in any wrongdoing. Moreover, the court does not see that the defendant was prejudiced by it. The problem was addressed and corrected prior to the conclusion of the defendant's testimony. The defendant was able to make whatever points were necessary from the address book. The jury was not misled in any fashion. Accordingly, the court does not find that this incident requires either dismissal of the charges or a mistrial.

### Receipt of "Inside Information" by the Government

Another potentially serious incident was raised by Skinner in an affidavit that was submitted to the court on March 3, 2003. This affidavit was supplied to defense counsel after Skinner testified for ten days during the trial. In the affidavit, he states that (1) Greg Hough, the government's counsel, provided him with what appeared to be an exhibit list that had handwritten checks next to certain exhibits; (2) the checks designated certain exhibits that Pickard's counsel wanted to look at for his cross-examination of Skinner; (3) this list had been given to Mary Beth Hill, the court's courtroom deputy, by Pickard's counsel who then provided it to Mr. Hough at his request; (4) Mr. Hough explained that Ms. Hill provided "inside information" to him because she was on "good terms" with his wife; and (5) Mr. Hough and the case agent would then discuss the items that were noted on the exhibit list and advise Skinner on the documents for the purposes of his expected cross-examination.

The government responded to this affidavit with affidavits from Mr. Hough and the case agents. Mr. Hough and case agents denied that they obtained a list of

defense exhibits or that they ever showed such a list to Skinner. They further stated that they made no efforts to direct or influence Skinner's testimony. Mr. Hough specifically denied the statements attributed to him in Skinner's affidavit. He did recall an event in the trial where Ms. Hill was delivering copies of certain exhibits to defense counsel. He noted that Ms. Hill did ask him if he wanted copies also, and he stated that he might already have copies but in order to make that determination he would need to see what documents were being copied. He states that Ms. Hill informed him of the trial exhibit numbers and that Skinner might have been in the courtroom at that time. He specifically denied the allegation that Ms. Hill had ever provided him with "inside information" concerning this matter.

The court does not find the statements of Skinner credible on this issue. The court is not persuaded that any misconduct occurred here. The court does not believe that the government received any "inside information" or took advantage of any relationship with the court's employee. In sum, the court does not find that this alleged incident provides any basis for dismissal or a mistrial.

**Violation of Court's Sequestration Order**

Skinner related during his testimony at the hearing on the instant motion that following the completion of his testimony he had talked on the telephone with Agent Ralph Sorrell, who had also earlier testified in the trial. Skinner stated that Agent Sorrell indicated, inter alia, that after the conclusion of his testimony he was watching the trial on the television monitor in the United States Marshal's Office, contrary to the court's sequestration order. Agent Sorrel vehemently denied this accusation. He indicated that he had never even been in the Marshal's Office, much less viewed any of the court's proceedings. He indicated that he never told Skinner that he had watched any televised proceedings of the trial.

This is another example of testimony from Skinner that the court did not find credible. The court found Agent Sorrell's testimony credible on this issue. The court does not believe Agent Sorrell has ever visited the Marshal's Office. In sum, the court does not find any improper conduct by the government or its agents occurred. In addition, even if the sequestration order had been violated, the only step that the court would take would be to prevent Agent Sorrell from testifying on rebuttal. Accordingly, even if this matter had occurred, and by making this statement the court does not suggest that it did, there has been no showing of prejudice to the defendant.

**Government's Efforts to Influence Skinner's Testimony**

The defendant has suggested that the government somehow influenced the testimony of Skinner with advice on how to testify or on what matters to avoid. The court is not certain that any misconduct occurred in the advice purportedly given by government counsel. The court expects that counsel will advise a witness on various aspects of his or her testimony. The court does not believe that this advice, if it occurred, went too far. There is no indication that the government influenced or shaped Skinner's testimony. Mr. Hough and the case agents have specifically indicated in affidavits that they never made any efforts to direct or influence Skinner's testimony. Moreover, after listening to Skinner for a period of ten days, the court believes that there is little chance that any attorney could do so. Skinner is a very confident, controlling individual. He appears resistant to any effort to manipulate him. The court is confident that government's counsel did

**1210**

little to influence Skinner's testimony, and could not have done so even if an effort was made.

**Failure to Disclose Skinner's Prior Confidential Informant Activities**

The defendant has argued that the government committed misconduct by failing to disclose Skinner's prior work as a confidential informant. This is one of those areas where the defendant has failed to provide any support for this argument. The defendant has not articulated one instance where the government failed to disclose a prior situation where Skinner was used as a confidential informant. Without such support, we cannot make a finding of any government misconduct. The court would note that the government did provide the court with a copy of Skinner's DEA confidential informant file. The court has reviewed that file and discovered no other instances where Skinner acted as a confidential informant other than those that were provided to defense counsel by the government.

In sum, the court has found no basis for dismissal of the charges or a mistrial based on governmental misconduct. The court has found that either no misconduct occurred or that the defendants were not prejudiced by it. Accordingly, the defendant's motion shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss based upon outrageous government conduct and prosecutorial misconduct or, in the alternative, for a mistrial (Doc. # 296) be hereby denied.

**IT IS SO ORDERED.**